# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD ESPARZA, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. EDCV 06-00456 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL J. ASTRUE[1], | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. Following an administrative hearing, plaintiff's applications were denied in a written decision by Administrative Law Judge Charles E. Stevenson (the "ALJ"), who found that plaintiff retained the ability to perform light work with occasional climbing, balancing, stooping, kneeling, crouching and

---

[1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart. Fed. R. Civ. P. 25(d)(1).

1  crawling. [JS 2; Administrative Record ("AR") 17-17]. The ALJ determined that plaintiff's RFC did not

2  preclude him from performing work that exists in significant numbers in the national economy, and

3  therefore the ALJ found plaintiff not disabled at any time through the date of his decision. [JS 2; AR18].

4  The Appeals Council denied plaintiff's request for review. [AR 4-8].

5  **Standard of Review**

6      The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

7  evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002,

8  1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is more

9  than a mere scintilla but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

10  Thomas, 278 F.3d at 954.  Substantial evidence means "such relevant evidence as a reasonable mind might

11  accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co.

12  of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954.  The court is required to

13  review the record as a whole, and to consider evidence detracting from the decision as well as evidence

14  supporting the decision.  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53

15  F.3d 1035, 1039 (9th Cir. 1995).   "Where the evidence is susceptible to more than one rational

16  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas,

17  278 F.3d at 954 (citing  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

18  **Discussion**

19  **Consultative psychiatrist's opinion**

20      Plaintiff also argues that the ALJ erroneously rejected the opinion of the Commissioner's

21  consultative psychiatrist, Dr. Inderjit Seehrai. [JS 2-6].

22      Where the opinion of an examining physician is uncontroverted, the ALJ must provide clear and

23  convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that

24  of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons

25  that are based on substantial evidence in the record.  Batson v. Commissioner of Social Sec. Admin., 359

26  F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester

27  v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

28      Dr. Seehrai conducted a post-hearing consultative psychiatric examination of plaintiff at the

Commissioner's request  on July 25, 2005.  Dr. Seehrai elicited a history, reviewed medical records, and conducted a mental status examination. [AR 301-305].  His diagnosis was depressive disorder, not otherwise specified, mild.  In his narrative assessment, he wrote:

> [Plaintiff] did not show any depression or thought disorder.  He is capable of interacting with other people and public.  He is capable of doing simple and repetitive tasks.  He is capable of doing more detailed and complex tasks.  *He may have moderate-to-severe impairment to finish his workday or workweek because of his medical problems, for which he needs to see a medical doctor.*

[AR 304 (italics added)].

Discussing the italicized observation, the ALJ wrote:

> Dr. Seehrai evaluated the claimant strictly as a psychiatrist and not for any other medical purpose.  Moreover, these purported "medical problems" are the ones alleged by the claimant and not based on objective medical findings. Therefore, Dr. Seehrai's statement regarding limitations due to other medical condition[s] is highly inappropriate and unwarranted and is rejected as unsupported by any actual objective findings.

[AR 15].

Plaintiff does not take exception to Dr. Seehrai's psychiatric diagnosis or mental functional capacity assessment.  He argues, however, that the ALJ erred in rejecting Dr. Seehrai's observation that plaintiff's "medical problems" may limit his ability to finish a normal workday or workweek. Plaintiff reasons that Dr. Seehrai is a licensed physician who is competent to evaluate whether plaintiff's medical problems may interfere with his ability to work, and that the standard "multiaxial" diagnostic protocol used by Dr. Seehrai actually requires the diagnostician to consider physical impairments.[2]  Those contentions are accurate in a general sense, but plaintiff fails to show any legal error by the ALJ in the circumstances of this case.

---

[2]   The American Psychiatric Association endorses the use of a "multiaxial" diagnostic protocol that contains five "axes." Axis I is for clinical psychiatric disorders. Axis II is for personality disorders and mental retardation.  Axis III is for general medical conditions.  Axis IV is for psychosocial and environmental stressors. Axis V is for the Global Assessment of Function, the "clinician's judgment of the individual's overall level of functioning." The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment (4th ed. 1994)(revised 2002).

Plaintiff, who was 47 years old on the date of the ALJ's decision, alleged that he became disabled on March 17, 2003 due to back, knee, and foot problems causing difficulty wearing shoes, difficulty walking, and pain. [AR 60, 70, 318].  He said that he stopped working as truck driver in March 2003 due to corrective surgery for hammertoes. [AR 70, 318].  He testified that he was hired back to that job but "quit going" because he could not walk that well after his surgery, had "severe" back pain, and because he was moved to another location and did not have transportation to get to work. [AR 318-319]. He alleged that his back and knee problems were caused by a large oil pump falling on him at an earlier job. [AR 57, 319-320].

The ALJ found that plaintiff's severe medical impairments consisted only of mild back degenerative disease and a history of hammertoes with surgical correction. [AR 14-17].  Commenting that the record was "replete with subjective complaints without substantial objective findings," the ALJ noted that plaintiff had hammertoe surgery in March 2003. [AR 171-211]. His surgeon released him to work in July 2003.  In August 2003, plaintiff reported swelling and pain in his right and left second toes. [AR 167-168, 171]. He exhibited joint stiffness and decreased strength in those digits, but his physical examination was otherwise normal. [AR 167-168, 171].  Continued home exercises and orthotics were recommended. [AR 168, 171]. Plaintiff sought intermittent treatment between 2003 and 2005 for complaints of chronic low back pain and knee pain.  [AR 231-288]. He was diagnosed with lumbar facet syndrome (or alternatively lumbar degeneration), lumbar disc disease, and left knee tendinitis or osteoarthritis. [See, e.g., AR 238, 284, 287]. At various times he was prescribed lumbar facet injections, pain and anti-inflammatory medication, a TENS unit, and physical therapy, which provided incomplete relief. [AR 212, 225, 231-297]. In January 2005 he received a diagnosis of "possible pain disorder of no organic findings" from Dr. William Hale, an orthopedic surgeon who treated plaintiff for back and knee pain. Dr. Hale essentially noted that plaintiff's persistent pain complaints were out of proportion to his clinical findings, which at that point consisted of painful neck flexion, pain on straight leg raising, and normal reflexes.  [AR 264-265, 270, 282-287]. [3]

During the June 2005 administrative hearing, plaintiff's attorney submitted a May 9, 2005 abdominal sonogram report and a May 25, 2005 CT scan showing a right kidney mass. [AR 298-299]. The sonogram

---

[3]    Plaintiff does not challenge the ALJ's assessment of the medical evidence other than Dr. Seehrai's opinion.

report stated that "renal cell carcinoma versus angiomyolipoma" (a benign tumor) were "considerations." [AR 299]. The CT scan is only partly legible, but statements made by plaintiff's counsel and the ALJ during the hearing indicate that the report said that the mass was "highly suspicious for renal cell malignancy." [AR 299]. During the hearing, plaintiff testified that the CT scan and sonogram had been ordered because of abdominal pain with diarrhea. He testified that the kidney mass was malignant, and that his right kidney was going to be removed, but he acknowledged that no biopsy had been performed and no kidney surgery or other treatment had yet been authorized or scheduled. [AR 324-328]. The ALJ asked plaintiff's counsel if there were any other information regarding a diagnosis of malignancy, but counsel said he was not aware of any. [AR 327]. Plaintiff did not submit any additional records post-hearing in connection with any kidney disease, nor has he made any arguments in this case based on the existence of any kidney disease before (or after) the date of the ALJ's decision. [AR 15].

Plaintiff was examined by Dr. Seehrai on July 25, 2005, a few weeks after undergoing the CT scan and sonogram. Plaintiff told Dr. Seehrai that he had "cancer of both kidneys" and that one of his kidneys "is going to be removed next week." [AR 302]. He said the cancer was caused by industrial chemicals that had affected his body. [AR 302]. Plaintiff also told Dr. Seehrai that he had arthritis in the knee and back, stomach pain, a history of foot surgery, and a pinched nerve. [AR 302]. He reported that he was taking no medication. [AR 302]. He denied having any mental problems. [AR 301].

In his multiaxial assessment, Dr. Seehrai gave plaintiff an "Axis I" diagnosis (for clinical psychiatric disorders) of mild depressive disorder not otherwise specified. He gave plaintiff an "Axis II" diagnosis (for reporting personality disorders and mental retardation) of "deferred." On "Axis III," used for reporting general medical conditions, Dr. Seehrai gave plaintiff a diagnosis of "cancer of both kidneys, by history, arthritis, pain in the knees and back, and status post surgery of his foot, pinched nerves in the back and stomach pain." The "psychosocial stressors" reported on "Axis IV" were "[n]o job, lot of physical problems." On "Axis V," used to rate Global Assessment of Function, Dr. Seehrai gave plaintiff a score of 58, at the high end of the decile range representing a moderate functional impairment or moderate symptoms.[4] [AR 304].

---

[4]    The GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological,

1    In the narrative portion of his assessment, Dr. Seehrai made the comment that plaintiff says the ALJ

2 wrongly rejected, namely that plaintiff "may have moderate-to-severe impairment to finish his workday or

3 workweek because of his medical problems, for which he needs to see a medical doctor." [AR 304]. Those

4 "medical problems," of course, notably included a diagnosis of cancer by history in both kidneys and

5 plaintiff's report of impending surgery to remove one kidney. Dr. Seehrai's reliance on that history

6 becomes apparent when considering the "Medical Source Statement of Ability to Do Work-Related

7 Activities (Mental)" that he completed and submitted with his examination report. [AR 306-308]. On that

8 report, Dr. Sheeran wrote: "Patient needs medical evaluation for his *stated kidney cancer*, which *if present*

9 could effect [sic] his physical strength to finish work day." [AR 307 (italics added)]. Because there is no

10 evidence in the record to substantiate an actual diagnosis of kidney cancer or recommendation for kidney

11 surgery, the ALJ was entirely justified in rejecting as unwarranted and unsupported by objective findings

12 Dr. Seehrai's suggestion that plaintiff might be unable to finish a normal workday or workweek.

13 Furthermore, Dr. Seehrai himself eschewed an intent to offer a definitive opinion about plaintiff's physical

14 functional capacity, but merely pointed out the need for a "medical evaluation" by a "medical doctor" (and

15 even then only if plaintiff had kidney cancer). [AR 304, 307].

16    While there is merit to plaintiff's argument that a psychiatrist is a licensed physician who is trained

17 to evaluate physical as well as mental problems, the ALJ did not err in rejecting Dr. Seehrai's suggestion

18 about the possible effects of plaintiff's "medical problems" in the circumstances of this case. This being

19 so, plaintiff's argument that the ALJ impermissibly omitted Dr. Seehrai's limitation from his hypothetical

20 questions to the vocational expert also fails.[See JS 6-10].

21

22    social, and occupational functioning of a patient. The GAF rating is in the lower of two decile

23 ranges if either the symptom severity or the level of functioning falls within that range (even if the
other component does not). A score of 51 through 60 signifies moderate symptoms, such as flat

24 affect or occasional panic attacks, or moderate difficulty in social, occupational, or school
functioning, such as having few friends or conflicts with peers or co-workers. See The American

25 Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial

26 Assessment (4th ed. 1994)(revised 2002); see also Morgan v. Commissioner of Soc. Sec. Admin.,
169 F.3d 595, 598 n.1 (9th Cir. 1999); Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322

27 n.9 (E.D. Cal. 1996), rev'd on other grounds,143 F.3d 1240, 1245 (9th Cir. 1998); see also Langley

28 v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

1

**Conclusion**

2          For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

3   reflects application of the proper legal standards.  Accordingly, defendant's decision is **affirmed.**

4

5   **IT IS SO ORDERED.**

6

7   DATED:   April 6, 2007

8

9                                                    _____/s/_____

10                                                  ANDREW J. WISTRICH
                                                      United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28